NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| JOSEPH W. JONES, | : | |
| | : | |
| Plaintiff, | : | Civ. No. 04-5396 (GEB) |
| | : | |
| v. | : | **MEMORANDUM OPINION** |
| | : | |
| JO ANNE B. BARNHART, | : | |
| Commissioner of Social Security, | : | |
| | : | |
| Defendant. | : | |
| | : | |

**BROWN, Chief Judge**

This matter comes before the Court upon the appeal of Plaintiff Joseph W. Jones ("Plaintiff") from the Commissioner of Social Security's final decision that Plaintiff was not entitled to disability insurance benefits under the Social Security Act ("the Act"). This Court, exercising jurisdiction pursuant to 42 U.S.C. § 405(g), and having considered the parties' submissions without oral argument pursuant to Federal Rule of Civil Procedure 78, will deny Plaintiff's appeal.

## I.  BACKGROUND

On or about April 18, 2002, Plaintiff filed an application for disability insurance benefits under Title II and Part A of Title XVIII of the Act, alleging disability as of September 15, 2001. R. at 59-62.  On or about October 25, 2002, the Social Security Administration denied Plaintiff's claim.  R. at 33-39.  On or about May 14, 2003, Plaintiff's request for reconsideration of this decision was denied.  R. at 46-48.  On or about July 7, 2003, Plaintiff filed a Request for Hearing by Administrative Law Judge.  R. at 50.  On April 9, 2004, Administrative Law Judge ("ALJ")

Dean Determan conducted a hearing to determine whether Plaintiff was disabled and thus entitled to benefits.  See R. at 22-32.

During questioning by the ALJ, Plaintiff testified that he worked as a foreman in a warehouse prior to the date of his alleged disability.  R. at 25.  Plaintiff testified that he receives treatments for multiple sclerosis that consist of steroids and Avonex Interferon 1A injections.  R. at 26.  Plaintiff then testified that he had gained weight from the steroids and suffered from cold flashes as a result of the injections.  Id.  Plaintiff testified that fatigue was a major symptom of his multiple sclerosis.  R. at 27.  Plaintiff further testified that within the course of a twelve-hour day, he was tired after four or five hours.  Id.  Plaintiff testified that he fluctuated between sleeping twelve hours a day and not sleeping at all.  R. at 29.  Plaintiff then testified that he believed the effects of his fatigue prevented him from working.  Id.

When questioned by his attorney, Plaintiff testified that he had problems with his balance and vision.  R. at 30-31.  Plaintiff testified that he used crutches and a cane once a month.  R. at 30.  Plaintiff then testified that he not only had blurred vision and saw flashing lights, but that bright lights also bothered him.  R. at 31.

The ALJ issued a decision on April 20, 2004, in which he determined that Plaintiff was not disabled within the meaning of the Act.  See R. at 11-21.  The ALJ concluded that Plaintiff retained the residual functional capacity to complete a range of sedentary work activity.  R. at 18.  The ALJ's opinion summarized all of the evidence in the record, including a history of Plaintiff's treatment for multiple sclerosis with Dr. Bernard Schanzer, in addition to the testimony at the hearing.  R. 16-18.

The ALJ noted Plaintiff's hospitalization in September 2001 for slurred speech.  R. at 16. An MRI of the brain revealed findings consistent with multiple sclerosis including a large plaque

in the brain's left frontal area and high signal foci scattered throughout the white matter.  Id.
Plaintiff was treated with large doses of steroids, and released with speech noted as 95%
intelligible.  Id.  Dr. Schanzer's examination in October 2001 reported that Plaintiff's speech was
slurred, but that he ambulated independently, was able to hop on either leg, and had no apparent
sensory deficits.  Id.

   The ALJ further noted Plaintiff's subsequent MRI taken in May 2002 that showed a
significant interval decrease in the size of white matter plaques in the left frontal lobe,
diminished foci of abnormally increased signal, and a complete near resolution of previously
demonstrated white matter plaque in the right corona radiate.  R. at 17.  Dr. Schanzer's progress
report issued in May 2002 stated that Plaintiff's speech and strength had significantly improved
as a result of his treatment with steroids and Avonex medication.  Id.  Plaintiff had clear speech,
brisk reflexes, and both eyes registered 20/25 visual acuity.  Id.  Plaintiff had no apparent
weakness although his gait was slow and mildly unsteady and paresthesia was present in his
lower extremities.  Id.  Dr. Schanzer ultimately concluded that Plaintiff was significantly limited
and disabled.  Id.  The ALJ opined that this conclusion was inconsistent with Plaintiff's normal
strength, near normal vision, and significantly improved speech.  Id.

   The ALJ then referenced Plaintiff's treatment notes from Gimbel Multiple Sclerosis
Center dated September 2002.  Id.  They reported that Plaintiff's vision was 20/30 and 20/60,
and that he was able to hop on either foot without weakness or sensory and reflex deficits.  Id.
Later progress reports stated that Plaintiff's reflexes were normal, but that he experienced
numbness in his legs, slurred speech, fatigue, back pain, hip pain, and a slow gait.  Id.

   At a consultative neurological examination conducted in May 2003 with Dr. Lewis
Saperstein, the ALJ noted that Plaintiff complained of extreme fatigue; weakness of the hips,

legs, and shoulders; numbness and tingling of the hands; occasional headaches; blurry vision; and poor speech.  Id.  Dr. Saperstein reported halting and jerky speech as well as a broad-based, somewhat unsteady gait.  Id.  Plaintiff stated that he was able to cook, clean, do laundry, shop, and bathe himself.  Id.  Plaintiff also stated that he used a cane and crutches much of the time, but that these devices were not prescribed by a doctor.  Id.  During the consultation, Plaintiff had difficulty with toe and heel walking, but was able to get on and off the examining table, rise from the chair, and dress without difficulty.  Id.  Although Plaintiff's strength was mildly reduced, his muscle tone and sensation were normal.  Id.  Dr. Saperstein opined that Plaintiff was limited in activity due to fatigability and limited in activities involving climbing, prolonged standing, or stability.  Id.

The ALJ also noted Dr. Schanzer's Residual Functional Assessment in March 2004 that found Plaintiff capable of less than sedentary work with standing limited to thirty minutes and sitting to more than two hours.  R. at 18.  Dr. Schanzer also determined that Plaintiff could carry up to ten pounds and was capable of moderate stress, but that his symptoms interfered with his ability to concentrate.  Id.  These symptoms included fatigue, balance problems, pain, depression, and vision and speech difficulties.  Id.

After setting forth the regulatory standard for evaluating the opinions of physicians of record, the ALJ determined that Dr. Schanzer's opinion could not be given controlling weight because it was inconsistent with his own findings and the evidence on record.  Id.  The ALJ acknowledged that treatment notes and examinations have consistently shown that Plaintiff only has mildly reduced strength, normal reflexes, a mildly unsteady gait, and near normal visual acuity.  Id.  The ALJ noted that although Plaintiff does have a cane, he testified that he only uses it a couple of times a month and that it was not prescribed by any doctor.  Id.  The ALJ further

noted that Plaintiff walks, goes shopping with assistance, visits family, likes to cook on occasion, drives locally, and is able to read and watch television even though his eyes become blurry.  Id.  Additionally, the ALJ recognized that contrary to Plaintiff's statement that he dropped things and had numbness in his hands, Dr. Saperstein found normal grip strength and finger dexterity.  Id.

The ALJ then made the following findings of fact and conclusions of law:  1) Plaintiff met the Act's nondisability requirements and was insured for benefits through April 20, 2004; 2) Plaintiff has not participated in substantial gainful activity since September 15, 2001; 3) Plaintiff's multiple sclerosis is labeled a "severe" impairment for the purposes of the Regulations; 4) Plaintiff's multiple sclerosis is not equivalent to one of the impairments listed in the Regulations; 5) Plaintiff's allegations regarding his condition cannot be accepted as credible; 6) Plaintiff retains the residual functional capacity to complete a range of sedentary work; 7) Plaintiff cannot perform his past relevant work; 8) pursuant to the Regulations, Plaintiff was a "younger individual" during his insured period; 9) Plaintiff has "more than a high school (or high school equivalent) education;" 10) Plaintiff's work skills are not transferable to other work within his residual functional capacity; 11) Plaintiff has the residual functional capacity to complete a substantial variety of sedentary work; 12) the consideration of Plaintiff's exertional capacity for sedentary work in accordance with his age, education, and work experience, directs a finding of "not disabled" by Medical-Vocational Rule 201.21; 13) Plaintiff's ability to balance and climb is slightly affected by nonexertional limitations, and therefore Medical-Vocational Rule 201.21 additionally directs a finding of "not disabled"; and 14) Plaintiff is not disabled as defined in the Act.  R. at 20-21.

On or about June 7, 2004, Plaintiff requested that the Appeals Council review the ALJ's

decision.  R. at 10.  The Appeals Council denied the request on October 1, 2004.  R. at 6-9.

Plaintiff then filed the instant civil action with this Court, seeking review of the Social Security

Administration's denial of disability insurance benefits.

## II. DISCUSSION

A. <u>Standard Of Review For Social Security Appeals</u>

The Commissioner's decisions as to questions of fact are conclusive before a reviewing

Court if they are supported by "substantial evidence in the record."  42 U.S.C. § 405(g); <u>Knepp</u>

<u>v. Apfel</u>, 204 F.3d 78, 83 (3d Cir. 2000).  "Substantial evidence" means more than "a mere

scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate."

<u>Plummer v. Apfel</u>, 186 F.3d 422, 427 (3d Cir. 1999)(quoting <u>Ventura v. Shalala</u>, 55 F.3d 900,

901 (3d Cir. 1995)).  If the ALJ's findings of fact are supported by substantial evidence, this

Court is bound by those findings, "even if [it] would have decided the factual inquiry

differently."  <u>Fagnoli v. Massanari</u>, 247 F.3d 34, 38 (3d Cir. 2001)(citing <u>Hartranft v. Apfel</u>, 181

F.3d 358, 360 (3d Cir. 1999)).

The Third Circuit has made it clear "that determination of the existence *vel non* of

substantial evidence is *not* merely a quantitative exercise.  A single piece of evidence will not

satisfy the substantiality test if the Secretary ignores, or fails to resolve, a conflict created by

countervailing evidence.  <u>Kent v. Schweiker</u>, 710 F.2d 110, 114 (3d Cir. 1983).  The ALJ must

analyze all the evidence and explain the weight he has given to probative exhibits.  <u>Gober v.</u>

<u>Matthews</u>, 574 F. 2d 772, 776 (3d Cir. 1978)(internal citation omitted).  As the Third Circuit has

held, access to the ALJ's reasoning is indeed essential to a meaningful court review.  <u>Fargnoli</u>,

247 F.3d at 42.  Nevertheless, the district court is not "empowered to weigh the evidence or

6

substitute its conclusions for those of the fact-finder." Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992)(citing Early v. Heckler, 743 F.2d 1002, 1007 (3d Cir. 1984)).

      B.  Standard for Awarding Benefits

      A plaintiff may not receive benefits under the Act unless he or she first meets statutory insured status requirements.  A plaintiff must be disabled, which is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A). An individual is not under a disability unless "his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives or whether a specific job vacancy exist for him, or whether he would be hired if he applied for work."  42 U.S.C. § 423(d)(2)(A).

      Regulations promulgated under the Act establish a five-step process for an ALJ's evaluation of claimant's disability.  20 C.F.R. § 404.1520 (2005).  In the first step, the ALJ must determine whether the claimant is currently engaged in "substantial gainful activity."  20 C.F.R. § 404.1520(a)(4)(i).  If the claimant is working and the work is substantial gainful activity, his application for disability benefits is automatically denied.  Id.  If the claimant is not employed, the ALJ proceed to step two and determines whether the claimant has a "severe impairment" or "combination of impairments."  20 C.F.R. § 404.1520(a)(4)(ii).  A claimant who does not have a "severe impairment" is not disabled.  Id.  Third, if the impairment is found to be severe, the ALJ determines whether the impairment meets or is equal to those impairments listed in Appendix 1

7

of this subpart ("the Listing").  20 C.F.R. § 404.1520(a)(4)(iii).  If so, the claimant is conclusively presumed to be disabled, and the evaluation ends.  Id.; 20 C.F.R. § 404.1520(d).

If it is determined that the impairment does not meet or equal a listed impairment, the ALJ proceeds to step four, which requires a determination of:  (1) the claimant's capabilities despite limitations imposed by an impairment ("residual functional capacity," or "RFC"); and (2) whether those limitations prevent the claimant from returning to work performed in the past ("past relevant work").  20 C.F.R. § 404.1520(a)(4)(iv).  If the claimant is found capable of performing his previous work, the claimant is not disabled.  Id.  If the claimant is no longer able to perform his prior line of work, the evaluation must continue to the last step.  The fifth step requires a determination of whether the claimant is capable of adjusting to other work available in the national economy.  20 C.F.R. § 404.1520(a)(4)(v).  The ALJ must consider the RFC assessment, together with the claimant's age, education, and past work experience.  20 C.F.R. § 404.1520(g).  Thus, entitlement to benefits turns on a finding that the claimant is incapable of performing her past work or some other type of work in the national economy because of her impairments.

The application of these standards involves shifting burdens of proof.  The claimant has the burden of demonstrating both steps one and two, i.e., an absence of present employment and the existence of a medically severe impairment.  Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).  If the claimant is unable to meet this burden, the process ends and the claimant does not receive benefits.  Id.  If the claimant carries these burdens and demonstrates that the impairments meet or equal those within the Listing, claimant has satisfied her burden of proof and is automatically entitled to benefits.  Id.  If the claimant is not conclusively disabled under the criteria set forth in the Listing, step three is not satisfied, and the claimant must prove "at step

8

four that the impairment prevents her from performing her past work." Id.  Thus, it is the claimant's duty to offer evidence of the physical and mental demands of past work and explain why she is unable to perform such work.  If the claimant meets this burden, the burden of proof then shifts to the Commissioner to show, at step five, that the "claimant is able to perform work available in the national economy." Id.  "The step five analysis can be quite fact specific." Burnett v. Commissioner, 220 F.3d 112,126 (3d Cir. 2000).

    C.  The ALJ's Decision Was Based Upon Substantial Evidence in the Record

        Plaintiff's only point on appeal alleges that the ALJ's determination was not based on substantial evidence because it failed to correctly consider the effects of Plaintiff's fatigue on his ability to "perform work on a sustained basis." Pl.'s Br. at 3.  Plaintiff relies on his testimony and the opinions of treating physicians to demonstrate that the fatigue resulting from his multiple sclerosis precludes his ability to engage in substantial gainful employment.  See Pl.'s Br. at 5-7. However, substantial evidence in the record supports the ALJ's assessment of Plaintiff's testimony and the determination that the physician opinions did not support a finding of disability.

        The ALJ's decision addressed the record in this case, as set forth above.  See R. at 14-21. The ALJ noted Plaintiff's complaints of fatigue, weakness, headaches, blurry vision, and slurred speech, and acknowledged that Plaintiff's functional limitations prevented him from performing his past relevant work.  R at 18.  However, the ALJ further noted that Plaintiff's treatment notes, examinations, and daily activities demonstrated that Plaintiff was not precluded from performing all work.  Id.  Specifically, the ALJ acknowledged that Plaintiff's examinations consistently showed only mildly reduced strength, normal reflexes, mildly unsteady gait, and near normal visual acuity.  Id.  The ALJ also noted that Plaintiff takes walks, goes shopping with assistance,

visits family, likes to cook on occasion, drives locally, and is able to read and watch television. Id.

Furthermore, the ALJ addressed the contradiction between Plaintiff's testimony and the medical evidence with regard to Plaintiff's functional capacity. The ALJ recognized that although Plaintiff testified that he used a cane, the device was not prescribed to him by a doctor. Id. Additionally, the ALJ noted that even though Plaintiff stated that he dropped things and had numbness in his hands, neurologist Dr. Saperstein found normal grip strength and finger dexterity in May 2003. Id. Based on the medical evidence in consideration with Plaintiff's daily activity, the ALJ reasonably concluded that Plaintiff retained the residual functional capacity to complete a range of sedentary work despite complaints of fatigue, pain, and functional limitation. Id.

Plaintiff also alleges that the ALJ improperly rejected the opinions of treating and examining physicians who noted Plaintiff's severe fatigue. Pl.'s Br. at 6. The Regulations state that a treating physician's opinion is given controlling weight with regard to the nature and severity of a Plaintiff's impairment only if the opinion is well supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with other substantial evidence in the case record. See 20 C.F.R. § 404.1527(d)(2); see also SSR 96-2p. In this case, the ALJ did not give Dr. Schanzer's opinion controlling weight because substantial evidence in the record, notably Dr. Schanzer's own examinations treatment notes of Plaintiff, contradicted his RFC asessment that Plaintiff was capable of less than sedentary work. See R. at 18.

Specifically, the ALJ noted that Dr. Schanzer's examinations revealed full, normal strength, normal spasticity, normal reflexes, and reduced sensation above the knee only. Id. The ALJ acknowledged that although Plaintiff had an ataxic gait, Plaintiff's unsteadiness was only

mild and that he was able to hop on either leg and walk without assistance.  Id.  The ALJ noted that Plaintiff's visual acuity consistently tested near normal and that he made few complaints of fatigue throughout the two years of treatment notes.  Id.  The ALJ also noted that Plaintiff's most recent MRI showed improvement in the white matter plaques and that while Plaintiff's speech was slow at times, it was 95% intelligible.  Id.  Additionally, the ALJ recognized that no testing was recommended for Plaintiff's back or hip pain.  Id.

Furthermore, contrary to Plaintiff's argument, the ALJ also explicitly addressed the report of Dr. Saperstein and did not challenge his conclusion that Plaintiff was limited in activities due to fatigability and is unable to return to his past relevant work, but found that Plaintiff nonetheless was not precluded from performing all work.  See R. at 17-18.  As to Plaintiff's argument with respect to Dr. Ford's brief note stating that Plaintiff "cannot maintain a 40 hour work week," it appears that the ALJ did not explicitly address this exhibit.  See R. at 233. However, as set forth above, a treating physician's opinion is given controlling weight only when it is well supported by objective medical evidence and is not inconsistent with other substantial evidence in the record.  20 C.F.R. § 404.1527(d)(2).  Consequently, Dr. Ford's opinion expressed in the note is, without more, insufficient and appears inconsistent with other substantial evidence in the record.

Thus, the Court finds that the ALJ reasonably concluded, based upon substantial evidence in the record, that Plaintiff was capable of performing sedentary work and was therefore not disabled under the Act.  Accordingly, Plaintiff's appeal is denied.

**III.  CONCLUSION**

For the reasons stated herein, Plaintiff's appeal is denied.  An appropriate form of Order accompanies this Memorandum Opinion.

Dated:  August 10, 2006

   s/ Garrett E. Brown, Jr.
GARRETT E. BROWN, JR., U.S.D.J.
